Carl Johannes ANDERSON, Plaintiff,

v.

Walter C. NEMETZ, individually and as
Chief of the City of Scottsdale Police
Department, et al., Defendants.

Civ. No. 69–520 PHX.

United States District Court,
D. Arizona.

Nov. 5, 1971.

Roger W. Kaufman and Paul G. Ulrich, Lewis & Roca, Phoenix, Ariz., for plaintiff.

Gary K. Nelson, Atty. Gen., Richard Filler, City Atty., City of Scottsdale, for defendants.

## OPINION AND ORDER

MUECKE, District Judge.

Plaintiff having moved for a three-judge court and all defendants having moved to dismiss the action, memoranda were filed and oral argument heard and the matters taken under advisement.

Plaintiff asks that an Arizona statute, A.R.S. 13–991, subsec. 3, providing that "A person who roams about from place to place without any lawful business" may be punished as a vagrant, be declared unconstitutional and that its enforcement be enjoined. Plaintiff argues that he has standing on the basis of a former prosecution under the statute, and on a threatened future prosecution. The threatened prosecution consists of plaintiff's intention to roam about "without any lawful business," and the declared intention of state law enforcement officials to enforce the statute concerned without exempting plaintiff. See Paragraph XI and XII of plaintiff's amended complaint and defendants' answers to plaintiff's interrogatories.

■ This is not "threatened prosecution" within the meaning of Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 759, 27 L.Ed.2d 696 (1971). The plaintiffs in *Boyle* alleged that the defendant law enforcement officials threatened to enforce the statutes concerned for the sole purpose of intimidating and harassing plaintiffs, and that the statutes were used to intimidate Negroes in the exercise of their First Amendment rights. Yet the Supreme Court found " * * * as to those plaintiffs without matters pending in the state courts, there were no facts alleged in the complaint showing that any of those plaintiffs were threatened with prosecution under any of the challenged statutes, or that they would suffer any irreparable injury if they were required to defend any prosecution that might be brought against them in state court." Thus, the "threatened prosecution" test within the meaning of *Boyle* and the rest of the series of recent cases beginning with Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L. Ed.2d 669 (1971) requires a more concrete or specific threat than the vague apprehension alleged here.

■ Plaintiff alleges that he was prosecuted under the statute at issue, that the prosecution terminated in a finding of "not guilty," and that the

constitutional issues which he raised in state court were never reached. These allegations fall far short of a showing of "irreparable injury" in the absence of any allegation of bad faith or harassment, or a "threat to the plaintiff's federally protected rights * * * that cannot be eliminated by his defense against a single criminal prosecution." Younger v. Harris, 91 S.Ct. at 751.

Plaintiff urges that the Younger v. Harris series does not overrule earlier law. However, even judged by the standards of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 1122–1123, 14 L.Ed.2d 22, plaintiff's amended complaint fails to show "irreparable injury." *Dombrowski* involves a series of actions by law enforcement officials specifically directed against the plaintiff, including illegal raids, seizures of files, and arrest warrants without probable cause, all done in such a manner that, " * * * a series of state criminal prosecutions will not provide satisfactory resolution of constitutional issues." The Supreme Court found in *Dombrowski*:

> "These events, together with repeated announcements by appellees that the appellant organization is a subversive or Communist-front organization, whose members must register or be prosecuted under the Louisiana statutes, have appellants allege, frightened off potential members and contributors. (Citation). Seizures of documents and records have paralyzed operations and threatened exposure of the identity of adherents to a locally unpopular cause.
>
> * * * * * *
>
> * * * appellants have attacked the good faith of the appellees in enforcing the statutes, claiming that they have invoked, and threaten to continue to invoke, criminal process without any hope of ultimate success, but only to discourage appellants' civil rights activities."

In oral argument on an earlier motion to dismiss this case held January 19, 1969 prior to the Supreme Court's

Younger v. Harris series of cases, this Court expressed its doubt as to whether the bare pleadings met the *Dombrowski* test. At that time, this Court in effect treated the then pending motion to dismiss *as a motion for summary* judgment as provided by Federal Rule of Civil Procedure 12(c), in order that the plaintiff might be given an opportunity to use interrogatories or other discovery devices to find out whether the defendants did in fact habitually file charges for harassment only, "without any hope of ultimate success," or to discover any other form of *Dombrowski* like bad faith enforcement of the statute, or other facts relative to the issue of plaintiff's standing.

The plaintiff then proceeded to do extensive discovery, and this Court will continue to treat the present motions to dismiss as if they were motions for summary judgment, in order that the plaintiff may have the full benefit of the discovery which he performed. Although answers to plaintiff's interrogatories show that the persons arrested are often young, and seldom have lawyers, and seldom appeal, there is no showing of bad faith arrests without any hope of ultimate success. Neither is there any showing, as the plaintiff alleged orally at the hearing of January 19, 1969, that the ordinance could never be attacked in the state courts as being unconstitutional because whenever this was done, the state courts dismissed the charge.

We therefore find, upon studying all of the pleadings and discovery procedures on file, that the plaintiff has failed to show "irreparable injury" by either the Younger v. Harris or the *Dombrowski* test.

Plaintiff argues that irreparable injury can be shown without bad faith or harassment where a statute on its face is flagrantly violative of the constitution "in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." Younger v. Harris at 91 S.Ct. 755 quoting from Watson v. Buck, 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416.

██ Unfortunately for the plaintiff's argument, the Supreme Court in the recent per curiam opinion in Palmer v. City of Euclid, Ohio, 402 U.S. 544, 91 S. Ct. 1563, 29 L.Ed.2d 98 (May 24, 1971) refused to find that a similar ordinance * was unconstitutional on its face. The Court discussed the statute in terms of the very specific and concrete application to a particular criminal defendant, concluding that the statute was vague "as applied to Palmer." Two concurring justices would "go further and hold that the ordinance is unconstitutionally vague on its face." 91 S.Ct. 1564–1565.

The *Palmer* holding affects the picture of this case in another, more direct fashion. Although refusing to find similar wording unconstitutional on its face, *Palmer* suggests that any construction of the term "lawful business" which would construe the term to mean "only visible and lawful commercial activities on the streets, thus in effect converting the ordinance into a curfew with exceptions for lawful commercial conduct" would be irrational. 91 S.Ct. 1564.

*Palmer* further holds that the term "without visible or lawful business" does not give constitutionally sufficient notice to the average person that he will be held criminally responsible for conduct where "there is no suggestion whatsoever that what he did was unlawful under the local, state, or federal law." 91 S.Ct. 1564.

---

* A suspicious person is defined as "Any person who wanders about the streets or other public ways or who is found abroad at late or unusual hours in the night *without any* visible or *lawful business* and who does not give satisfactory account of himself. 91 S.Ct. at 1564 (Emphasis supplied).

In short, the *Palmer* decision puts a curb on the unrestrained use of the so-called "vagrancy" statutes by saying in effect that there must be something more about a person's conduct than just being on the street late at night "without visible or lawful business." The conduct must be such as he could "reasonably understand to be proscribed." That is, the person to be charged under the act must be·engaged in conduct of a kind which reasonably suggests a violation of a local, state, or federal law. In other words, purposeless loitering, just "hanging around" without more—without attendant suspicious circumstances and conduct in surroundings, all of which might reasonably indicate that a person is about to commit, has committed, or is committing a crime—can not be a reason for the filing of a charge under the vagrancy statute without running afoul of the Constitution of the United States.

We must assume that Arizona state officials will follow the edict of the Supreme Court of the United States and that the defendants' expressed intention to enforce A.R.S. 13–991, subsec. 3 means the kind of limited enforcement which can meet the heavy burden of the *Palmer* constitutional test.

Plaintiff has made no showing of an intention to perform any acts for which he could be prosecuted under A.R.S. 13–991, subsec. 3, as construed in light of *Palmer*. Certainly plaintiff has shown no need for protection of his constitutional rights beyond that already afforded him by the *Palmer* holding.

In the absence of any showing of threatened prosecution, or bad faith and harassment, or irreparable injury, or illegal application of the ordinance in question; plaintiff has no standing to bring this action and, therefore, plaintiff's motion for a three-judge court is denied, and the complaint is dismissed.