Dr. Melvin B. BAKER, D.D.S., Plaintiff,

v.

The REGISTERED DENTISTS OF OKLAHOMA, a state agency, Defendant,

and

Oklahoma Dental Association, Inc., Intervenor.

Civ. No. 82–334–R.

United States District Court, W. D. Oklahoma.

June 3, 1982.

**1178**

Mark E. Hammons, Hammons, Wolking & Hammons, El Reno, Okl., for plaintiff.

James E. Poe, Tulsa, Okl., for defendant.

James F. Davis, Andrews, Davis, Legg, Bixler, Milsten & Murrah, Inc., Oklahoma City, Okl., for intervenor.

## ORDER

DAVID L. RUSSELL, District Judge.

This Court has been called upon to decide if a member of the dental profession should be free to advertise on radio and television, in display ads in the newspaper, on billboards and off-site signs, and under a trade name, all of which are prohibited by § 328.28 of the State Dental Act of Oklahoma.

This Court envisions the paramount goal of professionals to be serving society. Recently, however, the commercial aspect of professions has been acknowledged because, in this day and age, it would be naive to believe that members of professions do not wish to profit from their work. However, personal gain need not, and, in fact, must not be inconsistent with retaining inviolate the ethical principles which each member of a profession has taken an oath to uphold.

The Plaintiff, Melvin B. Baker, is a dentist licensed to practice in the State of Oklahoma. Defendant, Registered Dentists of Oklahoma, is an agency of the state which is empowered to enforce the provisions of Oklahoma's State Dental Act. 59 O.S.Supp.1981 § 328.1 et seq. Defendant Intervenor, Oklahoma Dental Association, is an Oklahoma nonprofit corporation consisting of a voluntary organization of licensed dentists. Membership in the association is not a prerequisite to practice dentistry in this state; however, 90% of the licensed dentists in Oklahoma are members of the association.

In 1980 the Defendant Registered Dentists, in recognition of an emerging body of law establishing a First Amendment right to commercial speech, suspended enforcement provisions of The Oklahoma Dental Act regarding all forms of advertising to allow the governing Board time to study the problem and make a recommendation to the Oklahoma legislature. Amending legislation was enacted and became effective on October 19, 1981. Section 328.28 provides that dentists may advertise by print media in nondisplay type, in the telephone directory, and on signs located on the property where their offices are located. Prohibited by the Act are advertising on radio, television, billboards and off-site signs and the use of trade names. Of course misleading or potentially misleading advertising is forbidden.

The Plaintiff, Dr. Baker, has engaged in some forms of advertising prohibited by § 328.28. The Defendant has threatened Plaintiff with disciplinary proceedings because of Plaintiff's violations of the Act. It is alleged by Plaintiff that his First Amendment Constitutional guarantee of free speech has been denied and he seeks to have § 328.28 declared unconstitutional and the Defendants enjoined from its enforcement.

A hearing was held on Plaintiff's Application for Preliminary Injunction on March 29, 1982. Subsequently, all parties agreed that the injunction hearing would be consolidated with a hearing on the merits pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure. On April 1, 1982 parties were given the opportunity to present any additional evidence and testimony. Supplemental briefs and Proposed Findings of Fact and Conclusions of Law were submitted ten days later by all parties.

Dr. Baker practices dentistry full-time in Oklahoma City. In addition he owns seven dental clinics throughout the state located in Oklahoma City, Catoosa, Sand Springs, Muskogee, Lawton and Midwest City. All of these clinics are known by the name "M. B. Baker, D.D.S. and Associates" and "The Denture Center." The clinics primarily provide dentures and related dental serv-

ices. Dr. Baker is not physically present or personally practicing dentistry in any of the seven clinics. Rather, Plaintiff employs dentists to work in each clinic.

In the summer of 1981 Dr. Baker began advertising his clinics on radio in Oklahoma City and Tulsa. In Oklahoma City the ad included a dental health tip sponsored by "The Denture Center" and was described by Plaintiff as a public service, informational advertisement. On the other hand, the Tulsa ad was purely promotional and was called by the Plaintiff a "selling type" ad.

Dr. Baker has also advertised in the newspapers using display type. The Plaintiff further professes a desire to advertise on television and billboards, but has not yet used these media.

The threshold question confronting the Court is whether Plaintiff can challenge the entire § 328.28 or whether his challenge must be limited to a consideration of the particular violation of the Act present in this action.

■ A facial challenge of a statute as void for overbreadth is appropriate where the activity targeted or significantly prohibited by the law is a protected activity, such as free speech. Implicit in overbreadth analysis is the notion that a law should not be voided on its face unless its deterrence of protected activities is substantial. Thus the U. S. Supreme Court has not struck down trespass, breach of the peace, or other criminal laws in which the number of instances in which these laws may be applied to protected expression is small in comparison to the number of instances of unprotected behavior which are the law's legitimate targets. A statute narrowly drawn to reflect a close nexus between the means chosen by the legislature and the permissible ends of government is thus not vulnerable on its face simply because occasional applications that go beyond constitutional bounds can be imagined. *Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965).

The Defendants here contend that commercial speech is not as protected an activity as speech in general and therefore the overbreadth doctrine is inapplicable to laws regulating commercial speech. *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977).

The Plaintiff argues that the resulting deterrent to protected speech is not effectively removed if "the contours of regulation would have to be hammered out case-by-case—and tested only by those hardy enough to risk criminal prosecution [or other sanctions] to determine the proper scope of regulation." *Dombrowski v. Pfister*, 380 U.S. 479 at 487, 85 S.Ct. 1116 at 1121, 14 L.Ed.2d 22 (1965).

■ Ordinarily a Plaintiff claims that a statute is unconstitutional as applied to that particular person. If the Plaintiff prevails, the Court may carve out the unconstitutional aspects of the law by invalidating its improper applications on a case-by-case basis. Moreover, generally challengers to a law are not permitted to raise the rights of third parties, but may only assert their own interests. In overbreadth analysis, those precepts retreat and Plaintiffs are allowed to raise the rights of third parties and the Court may invalidate the entire statute on its face, not merely as applied. The concern motivating an overbreadth application is the "chilling" deterrent effect of the overbroad statute on third parties not willing to bring suit. An overbroad law's very existence may cause others not before the Court to refrain from constitutionally protected speech or expression. *Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980), reh. den. 445 U.S. 972, 100 S.Ct. 1668, 64 L.Ed.2d 250.

■ In the particular context of the case at bar the Court will disregard the general rule against permitting one whose conduct may be validly prohibited to challenge the statute as it applies to others because of the possibility that protected speech may be inhibited by the overly broad reach of the statute. Furthermore, it would be untenable for this Court to monitor this statute on an ad-by-ad basis.

In accordance with the following, 59 O.S. 1981 Supp. § 328.28 is declared unconstitutional in part and constitutional in part.

■ This Court begins with the proposition that no speech, even commercial speech, should be limited without a compelling state or public interest.

■ It is clear that professionals may advertise to some extent. A state may not prevent the publication in a newspaper of truthful advertising concerning the availability and terms of routine legal services. *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). Similarly in *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978) *Bates* was interpreted as holding that "truthful, restrained advertising of the prices of 'routine' legal services would not have an adverse effect on the professionalism of lawyers." (at p. 456, 98 S.Ct. at p. 1918).

In its most recent pronouncement on regulation of commercial speech, the Supreme Court set forth the following guidelines:

"Even when a communication is not misleading, the state retains some authority to regulate. But the state must assert a substantial interest and the interference with speech must be in proportion to the interest served. *Central Hudson Gas Co. v. Public Service Commission*, 447 U.S. [557] at 563, 564 [100 S.Ct. 2343, 2350, 65 L.Ed.2d 341]. Restrictions must be narrowly drawn, and the state lawfully may regulate only to the extent regulation furthers the state's substantial interests."

*In the Matter of R. M. J.,* —— U.S. ——, ——, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982).

In addition to these general guidelines, the Court has recognized that the analysis must take into account the particular medium of communication:

"Even a cursory reading of these opinions reveals that at times First Amendment values must yield to other societal interests. These cases support the cogency of Justice Jackson's remark in *Kovacs v. Cooper*, 336 U.S. 77, 97, 93 L.Ed. 513, 69 S.Ct. 448 [458], 10 A.L.R.2d 608 (1949); each method of communicating ideas is a 'law unto itself' and that law must reflect the 'differing natures, values, abuses and dangers' of each method." *Metromedia, Inv. v. San Diego*, 453 U.S. 490, 516, 101 S.Ct. 2882, 2897, 69 L.Ed.2d 800, 820 (1981).

The Court recognizes that the "special problems of advertising on the electronic broadcast media will warrant special consideration." *Bates v. State Bar of Arizona*, 433 U.S. 350, 383, 97 S.Ct. 2691, 2708, 53 L.Ed.2d 810 (1977).

■ The Defendants assert that the regulations contained in § 328.28 are valid "time, place and manner" restrictions in light of the "special problems" of advertising by means of radio and television. *Virginia Pharmacy Board v. Virginia Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). It is argued that while newsprint is a neutral medium, on the electronic media the message is delivered with personality. The voice on radio and the appearance and voice on television may cause an emotional impact and may transmit subtle implications designed to manipulate the audiences. According to the Defendants, radio and television are inherently misleading since by the magic of the media itself, they offer the opportunity to sell, seduce and persuade the public.

The Defendants contend that the manipulative nature of electronic media would be impossible to regulate in a fashion other than a blanket prohibition against its use for professional advertisements.

Although the Defendants set forth persuasive evidence in support of their theory that radio and television advertising is inconsistent with the goals and standards of the dental profession, the Court is not convinced that state interests cannot be served by a less restrictive regulation of advertising. Dr. William Brown, Dean of the University of Oklahoma College of Dentistry, testified that state interests promoted by dentists were (1) to provide services (2) to

develop a personal relationship between the doctor and the patient and (3) to stress continuation of dental care in order to prevent dental disease. He stated that in the 1930's approximately 20% of the public were receiving dental care whereas in 1982 the figure has risen to 50%. In order to serve the vital interest of recruiting additional people to the continuum of dental care system, Dr. Brown recognized the need to inform the public about availability and location of dental services. He stated that patients find out about dentists by "word-of-mouth", as well as by advertisements in the telephone directory, professional journals and newspapers. The assistance of advertisements to consumers was readily admitted, but it was Dr. Brown's opinion that the necessary information can be relayed to the public by informative ads rather than attraction ads, such as would be carried on radio and television. However it was candidly conceded that truthful advertising is possible on radio and television. In fact, radio and television may be considered a more effective means of communication as they reach an increasing number of people.

It appears to the Court that the state interests, as well as those of the dental profession, could be well-served by advertising on electronic media. Amidst the criticism of these media for what were perceived as inherently misleading characteristics, it was indicated that radio and television are more inclusive and more comprehensive and may be more persuasive methods of delivering a message.

As Plaintiff pointed out, all the helpful aspects of advertisements are of no benefit to the public whatsoever if the public does not receive the information. In this regard, the more people reached by the ads, the more people who will probably seek dental care. If radio and television ads encourage and even persuade a portion of the remaining 50% of the public to see a dentist, the public interests, the state interests and the interests of the dental profession will all be better served.

It is the view of the Court that this advertising is conducive to serving the public interest and this interest outweighs the interest of the profession in restraining members from advertising in a new and allegedly undignified manner. The Court determines that radio and television are not inherently misleading means of communications. The public can be truthfully informed and may still be allowed a meaningful intellectual choice, so long as the advertising is regulated to eschew false or deceptive advertisements. It is the conclusion of the Court, that while the special problems inherent in radio and television advertising may warrant carefully delineated guidelines, an absolute bar is not permissible under the First Amendment guarantees. Perhaps the misleading potential of these media could be reduced by prohibiting celebrity or personality endorsements. Evidence was presented that indicates such ads might tend to subconsciously persuade listeners or viewers that the dentist advertising through the popular personality or recognizable voice was a better qualified dentist. Experimentation with less restrictive regulation on electronic media advertising is desirable.

Although Defendants maintain that it would be difficult to supervise and control electronic media advertising, it was noted that there are many fewer radio and television stations in Oklahoma than there are newspapers. Advertising in newspapers is allowed by the Act and duly regulated by the profession.

The controversy over display type advertising in newspapers seems small in comparison with the disputes over electronic media already considered. "Display type" refers solely to the size and style of type used in the ad.

The concern of Defendants is that the emphasis of relatively uninformative facts in larger or bolder print could be misleading to the public. Testimony at the hearings was that display ads are not inherently misleading.

It is conceded that display ads have more latitude towards eye-catching attraction

and promotion. As previously discussed herein, however, the public interest in being informed and the interest in the message being delivered to the public outweighs the possibility that a professional might utilize the media for solely personal gain in disregard of the ethics of his profession.

Again, what good are advertisements that do *not* catch the public's eye? They are not read and therefore no one can benefit from them.

This is not to say that in a display format there is not room for deception. Defendants believe that by emphasizing the name or particular qualification there will be an inference in the reader's mind that the dentist is better qualified—and that may be misleading. Hyperbole lends itself to deception. However, a particular display type ad may be regulated by the profession within the confines of the statutory language forbidding false and misleading or potentially misleading advertisements. An absolute prohibition of such ads is not required. The Court is willing to give a little credit to the public in this decision. Readers can distinguish between "hype" and "gimmickry" and helpful information. The fact that some words are slightly larger or bolder will not be of consequence so long as there are no "small print" caveats or "puffed" claims from which the public could not extract the truth.

Significantly, the Plaintiff introduced exhibits which prove that, although the Act prohibits display type ads, the Defendants themselves have utilized this manner of advertising. The Oklahoma Dental Association advertised "Dentistry for Older Tulsans" as well as Denture Clinics and Denture Services in newspapers in Tulsa and Oklahoma City. These ads were in a display type format. Names of dentists appeared in one ad but no names appeared in the other ads. Defendants attempted to distinguish themselves from the Plaintiff herein by stating that these were nonprofit services in which any dentist could participate and therefore no professional individually profited. No doubt display type ads were used in order to reach as many people

as possible with the information about dental services which might be advantageous to them. And, is not this the most important aspiration of all advertising?

The prohibition against display type ads in § 328.28(A)(1) is invalid and is therefore declared unconstitutional.

■ The Plaintiff argues that a prohibition against dentists advertising by means of billboards and off-site signs does not advance any of the interests ordinarily asserted in support of such regulations, e.g. aesthetics and traffic safety, since the use of such signs for other commercial messages is not prohibited by the state. The Defendants produced testimony that historically billboards and signs carried by hucksters and streetwalking bellringers were used to advertise dentistry. These methods of advertising were used in a blatant and unprofessional manner to extol the virtues of dental services to the public. According to Defendants, billboards represent the epitome of unrestrained and undignified advertising.

The state interest of protecting the dental profession's advertising from misuse is recognized by this Court. It is this state's interest, based upon actual prior experience and conditions existing in this state in the 1930's that the Oklahoma Legislature has uniformly sought to serve. However, "[b]illboards are a well-established medium of communication, used to convey a broad range of different kinds of messages." *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). The First Amendment's concern for commercial speech is based on the function of dissemination of information which advertising serves. Constitutional interests combine with the public interest in expanding the information available to consumers to outweigh the possible adverse effects on professionalism. This Court cannot approve an absolute suppression of commercial speech expressed on billboards and off-site signs. Again, the profession can regulate this method of advertising and must forbid advertising which is flawed because it is false or deceptive. Accordingly, the Court holds § 328.28(A)(7) unconstitutional.

The Plaintiff, Dr. Baker has registered the trade name "The Denture Center" with the Secretary of State of Oklahoma and has used this name in connection with his seven clinics. Trade names are prohibited by § 328.28(A)(11) of the Oklahoma Dental Act, but Plaintiff argues that the use of a trade name is constitutionally protected.

The Defendants submit that *Friedman v. Rogers*, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979) is controlling. There the United States Supreme Court held constitutional a statute which prohibited the practice of optometry under a trade name. It was acknowledged that the use of trade names is a form of commercial speech, but the Court noted that it is a distinctly different form of commercial speech from advertisements containing statements about the products or services offered and their prices. With respect to trade names the Court stated:

"Here, we are concerned with a form of commercial speech that has no intrinsic meaning. A trade name conveys no information about the price and nature of the services offered by an optometrist until it acquires meaning over a period of time by association formed in the minds of the public between the name and some standard of price or quality. (Footnote omitted) Because these ill-defined associations of trade names with price and quality information can be manipulated by the users of trade names, there is a significant possibility that trade names will be used to mislead the public.

The possibilities for deception are numerous. The trade name of an optometrical practice can remain unchanged despite changes in the staff of optometrists upon whose skill and care the public depends when it patronizes the practice. Thus, the public may be attracted by a trade name that reflects the reputation of an optometrist no longer associated with the practice."

There the state interest in protecting the public from deceptive and misleading use of trade names was substantial and well-demonstrated. The concerns of the Texas Legislature about deceptive uses of optometrical trade names were not speculative or hypothetical, but were based on experience in Texas. See *Texas State Bd. of Examiners in Optometry v. Carp*, 412 S.W.2d 307, appeal dismissed and cert. denied, 389 U.S. 52, 88 S.Ct. 241, 19 L.Ed.2d 51 (1967). It was held by the Supreme Court that rather than stifling commercial speech, a prohibition against the use of trade names ensures that information regarding [optometrical] services will be communicated more fully and accurately to consumers.

While the Plaintiff in the present action attempts to distinguish *Friedman* on the ground that there was a specific historical background documenting the evils of trade name usage in Texas, the Defendants maintain that, although factual history was important in that case, Oklahoma should not be forced to relive the evils endured by a sister state. Rather the Defendants state that they can learn from the sister state's history and can take steps to prevent such abuse within their own state. The Court agrees.

In the case at bar the use of the term "The Denture Center" by Dr. Baker is the use of a trade name and has the potential to be misleading. It may imply that the dentists at the clinic are specialists in providing dentures, while the evidence at the hearings revealed that neither Dr. Baker nor any of his associates are prosthedontists, which are denture specialists. Further, the use of this trade name combined with Dr. Baker's name may erroneously imply to the public that Dr. Baker personally supervises and works with the associates at each of the denture clinics.

Because of the potential for abuse, the Plaintiff does not have a protected constitutional right to use a trade name, and § 328.28(A)(11) of the State Dental Act is hereby declared constitutional. *Friedman v. Rogers*, supra.

All issues disposed of, it is unnecessary for the Court to determine whether or not the individual advertisements submitted by Dr. Baker are in violation of the remaining provisions of Oklahoma's State Dental Act.

The Court declares 59 O.S.Supp.1981, § 328.28 unconstitutional in part and constitutional in part as determined herein and permanently enjoins the enforcement by the Defendants of the unconstitutional portions of § 328.28.

With the foregoing decision the Court is certainly not placing its imprimatur on offensive, false, misleading or deceptive advertising by professionals. Rather, we seek to resolve the clash among First Amendment interests and competing concerns, preserving the constitutional protection of commercial speech and recognizing its utility in the search for truth.

IT IS SO ORDERED this 3rd day of June, 1982.

### JUDGMENT

The Court finds 59 O.S.1981 § 328.28 unconstitutional in that it prohibits advertising on radio and television, in display ads in the newspaper (§ 328.28(A)(1)) and on billboards and off-site signs (§ 328.28(A)(7)). Title 59 O.S.1981 § 328.28 is declared constitutional in that it prohibits the practice of dentistry under a trade name (§ 328.-28(A)(11)). Further, the Defendants are permanently enjoined from enforcing the unconstitutional provisions of 59 O.S.1981 § 328.28.

Dated this 3rd day of June, 1981.