No. ——. ZIGMOND *v.* SELECTIVE SERVICE LOCAL BOARD No. 16 ET AL. C. A. 1st Cir. Application for stay, presented to MR. JUSTICE FORTAS, and by him referred to the Court, denied. *Solicitor General Griswold* for respondents in opposition.

MR. JUSTICE STEWART, concurring.*

In voting to deny these applications, I intimate no view upon the merits of the applicants' substantive claims, which are not now before us.

MR. JUSTICE DOUGLAS, dissenting.†

In these cases the Courts of Appeals for the First and Second Circuits have held that § 10 (b)(3) of the Universal Military Training and Service Act, as amended by the Military Selective Service Act of 1967, 81 Stat. 104, 50 U. S. C. App. § 460 (b)(3) (1964 ed., Supp. III),[1]

---

*This memorandum applies also to *Shiffman* v. *Selective Service Local Board No. 5 et al., supra.*

†This opinion applies also to *Shiffman* v. *Selective Service Local Board No. 5 et al., supra.*

[1] "No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction . . . ."

precludes pre-induction judicial review of action taken against the two applicants by their local draft boards. They seek stays of induction into the Armed Forces until this Court has acted on certiorari petitions they will file, arguing that § 10 (b)(3) is inapplicable or may not constitutionally be applied to require registrants either to forgo the exercise of First Amendment rights or to vindicate them by defending a criminal prosecution.[2]

Applicant Shiffman's Local Board declared him delinquent, canceled his II–A occupational deferment and reclassified him I–A after Shiffman had "turned in" his draft classification card to the Government in an anti-war protest. He was then ordered to report for induction. Applicant Zigmond was classified I–A, but, having reached the age of 26, should ordinarily not have been called for induction until younger eligible registrants in the draft pool had been taken (see 32 CFR § 1631.7). Nevertheless, he received a delinquency notice followed by his induction notice soon after "turning in" to the Government both his draft registration and classification certificates as a sign of protest.

---

[2] *Oestereich* v. *Selective Service Local Board No. 11*, certiorari granted, *ante*, p. 912, raises the same issue presented in these cases, *viz.*, whether § 10 (b)(3) may, consistent with the First Amendment, preclude judicial review of petitioner's punitive reclassification and order to report for induction made by his local board after petitioner had returned his Selective Service registration certificate to the Government as a protest against the war in Vietnam. Although the Solicitor General supported that petition on the ground that § 10 (b)(3) should not be construed to preclude judicial review of local board action terminating an express statutory exemption granted by Congress, the writ we issued was unrestricted. The question of the validity of § 10 (b)(3) in cases raising First Amendment defenses to reclassification and induction is now pending before this Court, and these cases clearly come within the rule of *Yasa* v. *Esperdy*, 80 S. Ct. 1366, and *Keith* v. *New York*, 79 S. Ct. 938, in which stays were granted because similar or identical issues were before the Court in other cases.

I would grant the stays[3] as I am unable to see any place in our constitutional system for Selective Service delinquency regulations employed to penalize or deter exercise of First Amendment rights.

The First Amendment means that whatever speech or protest a person makes, he may not, I submit, be taken by the neck by the Government and subjected to punishment, penalties, or inconveniences for making it.

---

[3] The factors which we consider in passing upon stay applications include the likelihood that the case will command the vote of four Justices upon petition for certiorari (*Appalachian Power Co.* v. *American Institute of C. P. A.*, 80 S. Ct. 16 (MR. JUSTICE BRENNAN)); the likelihood of real and irreparable injury to the applicant if stay is denied (*Public Service Board of Vermont* v. *United States*, 87 S. Ct. 3 (MR. JUSTICE HARLAN); *Long Beach Federal Savings & Loan Assn.* v. *Federal Home Loan Bank*, 76 S. Ct. 32 (MR. JUSTICE DOUGLAS)); the existence of an important question not previously passed on by the Court (*McLeod* v. *General Electric Co.*, 87 S. Ct. 5 (MR. JUSTICE HARLAN)); possible mootness occurring if a stay is denied (*In re Bart*, 82 S. Ct. 675 (MR. CHIEF JUSTICE WARREN)); and pendency of similar or identical issues before the Court in other cases (*Yasa* v. *Esperdy*, 80 S. Ct. 1366 (MR. JUSTICE HARLAN); *Keith* v. *New York*, 79 S. Ct. 938 (MR. JUSTICE HARLAN)). And see *Rosenberg* v. *United States*, 346 U. S. 273, 289 (separate statement of Mr. Justice Frankfurter).

Although the Selective Training and Service Act of 1940 made no explicit provision for judicial review of the action of local boards, and in fact made their decisions "final," we found that Congress had not intended to deny all judicial review of a local board's action. Rather, we concluded, judicial review was available to the extent of determining in the criminal action whether there was any basis in fact for the classification given the registrant by his local board. *Estep* v. *United States*, 327 U. S. 114. We noted that we could "assume that where only one judicial remedy is provided, it *normally* would be deemed exclusive," 327 U. S., at 125. (Emphasis added.) We were not, however, then dealing with the question whether a restrictive review provision might itself offend the Constitution in circumstances where it operates to chill the effective exercise of First Amendment rights. See *Dombrowski* v. *Pfister*, 380 U. S. 479. That is the question which is presented here with respect to § 10 (b)(3).