Paul LEVIN

v.

**Arthur A. MARSHALL, Jr., State's Attorney, Prince George's County, Maryland, and Hon. J. Dudley Digges, Hon. Phillip H. Dorsey, Jr., Hon. Ralph W. Powers, Hon. Roscoe H. Parker, Hon. Ernest A. Loveless, Jr., Hon. William B. Bowie, Hon. Perry G. Bowen, Hon. Robert B. Mathias, and Hon. Samuel W. H. Meloy, Circuit Court Judges for the Seventh Judicial Circuit, Maryland.**

**Civ. No. 70–1096.**

United States District Court, D. Maryland.

Sept. 21, 1970.

Alan I. Baron and Sachs & Baron, Baltimore, Md., and Mitchell Rogovin, Bruce Montgomery, Norton F. Tennille, and Arnold & Porter, Washington, D. C., for plaintiff.

Francis B. Burch, Atty. Gen. of Md., and H. Edgar Lentz and Alfred J. O'Ferrall, III, Asst. Attys. Gen. of Md., for defendants.

## MEMORANDUM AND ORDER

FRANK A. KAUFMAN, District Judge.

Plaintiff, a citizen of the State of Maryland and a news photographer of the Diamondback, a daily student newspaper at the College Park campus of the University of Maryland, seeks, under 42 U.S.C. § 1983, to have the defendants restrained from enforcing or taking any action in connection with a subpoena duces tecum addressed to him and caused to be issued and signed by one of the defendants herein, the State's Attorney for Prince George's County, Maryland, requiring the appearance of plaintiff before a grand jury for the Circuit Court for that county and the production by him at that time of "all photographs taken by [him] or any other member of the staff of the Diamondback Newspaper relating to the disturbances at the University of Maryland from May 1, 1970 through May 15, 1970."[1] After receiving said subpoena

---

1. Counsel for the parties in this case have stated that they do not know of any case of record in which a federal district court has been asked, in a proceeding similar to this one, to determine whether a subpoena issued by a state court is overbroad in the sense that it requires a member of the news media to furnish information, which, from the point of view of plaintiff herein, curtails the

in July, 1970, plaintiff filed a motion to quash the subpoena in the Circuit Court for Prince George's County, on the grounds that the enforcement of the said subpoena would violate Article 40 of the Maryland Declaration of Rights and the First and Fourteenth Amendments to the United States Constitution. Plaintiff, in support of that motion, urged that such a subpoena should not be addressed to a member of the news media unless those seeking the subpoena first factually demonstrate to the court from which the issuance of the subpoena is sought (1) probable cause to believe that the photographs contain information relevant to the investigation of the grand jury; (2) there is no alternative source for the same or equivalent information, the production of which would not entail an equal incursion upon First Amendment rights; and (3) the information sought is so important to the investigatory proceeding that its nonproduction would defeat the ends of justice.

On August 20, 1970, Judge Roscoe H. Parker, sitting in the Circuit Court for Prince George's County, entered an Opinion and Order of Court denying the plaintiff's motion and holding that the subpoena as issued should be complied with by plaintiff.

Plaintiff appealed from Judge Parker's Order to the Court of Appeals of Maryland. That Court, on September 15, 1970, dismissed the appeal on the grounds that Judge Parker's Order was "presently unappealable" and the appeal "prematurely taken."

Thereafter, Chief Judge Ralph W. Powers, of the Circuit Court for Prince George's County, issued an order directing plaintiff to appear before the Prince George's County Grand Jury and to comply with the aforesaid subpoena. On September 21, 1970, Judge Powers amended that Order to require plaintiff's appearance on Thursday, September 24, 1970, at 9:30 a. m. On September 21, 1970, this case was instituted in this Court.[2]

Appended hereto is a revised subpoena which earlier today, September 21, 1970, was filed, issued and served upon plaintiff, after counsel for all parties in this case had represented and agreed as follows:

(1) Counsel for plaintiff informed counsel for defendants that counsel for plaintiff, after viewing and examining all photographs which plaintiff has informed them he has in his possession, have advised counsel for defendants that none of such photographs are within the coverage of the attached revised subpoena.

(2) Plaintiff continues to reiterate that his original position before Judge Parker is valid and correct. Plaintiff

constitutional right of freedom of the press. It would appear that under both the majority and minority standards set forth in Baines v. City of Danville, 337 F.2d 579 (4th Cir.), cert. denied, Chase v. McCain, 381 U.S. 939, 85 S.Ct. 1772, 14 L.Ed.2d 702 (1964), this Court has jurisdiction in this case. See Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). In that connection, this Court notes the issue of whether 42 U.S.C. § 1983 creates an exception to 28 U.S.C. § 2283. See, e. g., Judge Will's opinion in Landry v. Daley, 288 F.Supp. 200 (E.D.Ill.1968), appeal dismissed sub nom. Landry v. Boyle, 393 U. S. 220, 89 S.Ct. 455, 21 L.Ed.2d 392 (1968); appeal pending sub nom. Boyle v. Landry, 39 L.W. 3207 (U.S.1970), holding that 1983 is an exception to 2283.

2. Defendants, with the consent of this Court and of plaintiff, have orally moved to dismiss the complaint in this case and have orally requested this Court to deny any and all of the relief sought by plaintiff herein. Because of the time limitations involved, counsel for plaintiff have agreed that that statement, made in chambers to this Court in the presence of counsel, could be taken as made on the record by counsel and could be referred to in this Memorandum and Order as having been filed and made. The record will note that H. Edgar Lentz, Esq., Assistant Attorney General of the State of Maryland, has entered his appearance in this case as counsel of record for the defendants. Counsel for plaintiff have earlier today entered their appearance at the time the complaint in the within case was filed.

contends that the standards set forth in the "Guidelines for Subpoena to News Media," dated August 10, 1970, issued by the Department of Justice, and appended hereto, set forth the constitutional standards which should be applied in connection with the issuance of any subpoena to any member of the news media. Plaintiff asserts that those standards should not be applied until after an appropriate evidentiary basis has been established by the State. However, plaintiff, in the light of the revision of the subpoena, will, in this case, comply voluntarily with the revised subpoena, provided the defendant State's Attorney of Prince George's County agrees that plaintiff will not be asked to comply with the broader subpoena originally filed and issued and served in July of this year. The defendant State's Attorney so agrees. Plaintiff takes the position that the revised subpoena meets the standards urged by him.

(3) Defendants state that they agree that the revised subpoena replaces the earlier July, 1970 subpoena, and that defendants will be satisfied with compliance with the new subpoena. Defendants reiterate, however, their position that the earlier subpoena was validly issued and that Judge Parker's Order and Opinion were and are correct.

This Court has viewed, at the request of both sides, upon an ex parte submission by plaintiff, all of the photographs which plaintiff states he has in his possession which were taken on the night of May 14–15, 1970 on the College Park campus. None of those photographs fall within the purview of the revised subpoena. This Court undertook such examination with some reluctance, and only because of the conflict in certain affidavits filed for the first time earlier today in this case, with regard to what those photographs show or have been asserted to show.

Defendants have informed this Court that the Grand Jury currently sitting in Prince George's County, Maryland is interested in obtaining the photographs referred to in the revised subpoena and

that its desire to obtain such photographs, if any exist, forms the basis for the original and broader replaced subpoena filed, issued and served in July, 1970. It is for that reason, defendants assert, that they are satisfied in this case with the revised subpoena.

In Application of Earl Caldwell and The New York Times Company for an Order Quashing Subpoenas, 311 F.Supp. 358 (N.D.Calif. 1970), Judge Zirpoli, on April 6, 1970, filed a Memorandum Opinion, followed by an Order dated April 8, 1970, in which he ordered a newspaperman to appear before the federal grand jury sitting in that district, but modified the subpoena issued to that newsman so as to provide that he need not reveal any information gathered by him except to the extent that the furnishing of · such information was required by "a compelling and overriding national interest * * * which [could not] be served by any alternative means."

"These [First Amendment] freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions." NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963). First Amendment freedoms "are not for the benefit of the press so much as for the benefit of all of us." Time, Inc. v. Hill, 385 U.S. 374, 389, 87 S.Ct. 534, 543, 17 L.Ed.2d 456 (1967).

Defendants herein contend that subpoenas to newsmen do not substantially differ from those issued to others. Insofar as subpoenas to newsmen seek information gathered by newsmen in the performance of their work, this Court disagrees with that contention and believes that it is incumbent upon the government prosecutor to shoulder the burden of showing the need for the issuance of and compliance with any such subpoenas.

In view of the agreement of the parties herein, as above stated, it is not

necessary for this Court at this time in this case to determine whether the guidelines set forth by the Department of Justice comprise minimal constitutional standards which must be met before a member of the news media can be required to comply with a subpoena calling for the production of evidence obtained by that news media member in the performance of his work as a news reporter or news photographer. However, this Court would certainly expect, should the occasion demand, to attach great weight to those guidelines either in terms of the exercise of its supervisory authority as a federal district court or in terms of whether they establish minimal constitutional standards.

■ In this case, this Court takes note of the agreement of the parties, pursuant to which the new subpoena has earlier today been filed, issued and served, and pursuant to which plaintiff has obligated himself to appear before the Grand Jury in Upper Marlboro, Maryland, at 9:30 a. m. on Thursday, September 24, 1970, to respond truthfully to whether or not he has any photograph which falls within the context of that subpoena, and to produce and make available to the Grand Jury any such photograph, if he has any such photograph in his possession. On the basis of that agreement, this Court hereby determines that the controversy posed by plaintiff's complaint has become moot.

### APPENDIX A
### IN THE CIRCUIT COURT
### FOR PRINCE GEORGE'S
### COUNTY, MARYLAND

To: PAUL LEVIN
  c/o The Sunpapers
  Calvert & Centre
  Baltimore, Maryland

You are hereby commanded to appear before the Grand Jury for the Circuit Court of Prince George's County, Maryland, to testify for the State of Maryland and to remain in attendance until excused. Please report promptly to the Office of the State's Attorney, Room 405, Court House, Upper Marlboro, Maryland, by 9:30 A.M. on Thursday, September 24, 1970, and to bring with you any and all photographs taken on the night of May 14–15, 1970, and depicting a person or persons setting fire to or in any other way destroying or damaging property of the University of Maryland at College Park, Maryland, on the said night or depicting any persons present on or in the vicinity of any building of the University of Maryland, College Park campus while said building was on fire or was in any way being damaged or destroyed; specific reference being made to the photographs described by the said Paul Levin to investigators Donald Barnes and Top Barnes as having been taken by the said Paul Levin and being of such quality as to enable the authorities, if viewed by them, to identify the perpetrators of the acts above described and committed against the property of the State of Maryland on the night of May 14–15, 1970.

(s) ————————————————
        Arthur A. Marshall, Jr.
        State's Attorney

### THE NEW YORK TIMES
August 11, 1970
Page 24, Columns 1, 2, 3
Guidelines for Subpoenas
to News Media
Special to the New York Times

*ST. LOUIS, Aug. 10—Following are guidelines issued to the Department of Justice for subpoenas to the news media:*

First: The Department of Justice recognizes that compulsory process in some circumstances may have a limiting effect on the exercise of First Amendment rights. In determining whether to request issuance of a subpoena to the press, the approach in every case must be to weigh that limiting effect against the public interest to be served in the fair administration of justice.

Second: The Department of Justice does not consider the press "an investigative arm of the government." Therefore, all reasonable attempts should be made to obtain information from nonpress sources before there is any consideration of subpoenaing the press.

Third: It is the policy of the department to insist that negotiations with the press be attempted in all cases in templated. These negotiations should attempt to accommodate the interests of the grand jury with the interests of the news media. In these negotiations, where the nature of the investigation permits, the Government should make clear what its needs are in a particular case as well as its willingness to respond to particular problems of the news media.

## Authorization Required

Fourth: If negotiations fail, no Justice Department official should request, or make any arrangements for, a subpoena to the press without the express authorization of the Attorney General. If a subpoena is obtained under such circumstances without this authorization, the department will—as a matter of course—move to quash the subpoena without prejudice to its rights subsequently to request the subpoena upon the proper authorization.

Fifth: In requesting the Attorney General's authorization for a subpoena, the following principles will apply:

A. There should be sufficient reason to believe that a crime has occurred, from disclosures by nonpress sources. The department does not approve of utilizing the press as a springboard for investigations.

B. There should be sufficient reason to believe that the information sought is essential to a successful investigation —particularly with reference to directly establishing guilt or innocence. The subpoena should not be used to obtain peripheral, nonessential or speculative information.

C. The Government should have unsuccessfully attempted to obtain the information from alternative nonpress sources.

D. Authorization for requests for subpoenas should normally be limited to the verification of published information and to such surrounding circumstances as relate to the accuracy of the published information.

E. Great caution should be observed in requesting subpoena authorization by the Attorney General for unpublished information, or where an orthodox First Amendment defense is raised or where a serious claim of confidentiality is alleged.

F. Even subpoena authorization requests for publicly disclosed information should be treated with care because for example, cameramen have recently been subjected to harassments on the grounds that their photographs will become available to the Government.

G. In any event, subpoenas should, wherever possible, be directed at material information regarding a limited subject matter, should cover a reasonably limited period of time, and should avoid requiring production of a large volume of unpublished material. They should give reasonable and timely notice of demand for documents.

These are general rules designed to cover the great majority of cases. It must always be remembered that emergencies and other unusual situations may develop where a subpoena request to the Attorney General may be submitted which does not exactly conform to these guidelines.