**PLANNED PARENTHOOD ASSOCIATION OF CINCINNATI, INC., et al., Plaintiffs,**

v.

**The CITY OF CINCINNATI, et al., Defendant.**

**Civ. No. C–1–86–126.**

United States District Court, S.D. Ohio, W.D.

Feb. 21, 1986.

Alphonse Gerhardstein, Cincinnati, Ohio, for plaintiffs.

John Concannon, Cincinnati, Ohio, for defendant.

## FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

CARL B. RUBIN, Chief Judge.

This matter is before the Court on Plaintiff's Motion for a Preliminary Injunction, upon memoranda and upon oral argument by counsel. On February 7, 1986 this Court granted a Temporary Restraining Order enjoining the City of Cincinnati from enforcing Ordinance 8–1986 identified as a "fetus disposal ordinance". On February 17, 1986 that Temporary Restraining Order was extended to February 24, 1986. In accordance with Rule 52, Fed.R.Civ.P., the Court does set forth its Findings of Fact, Opinion and Conclusions of Law.

## I.

### FINDINGS OF FACT

1. Plaintiff Planned Parenthood Association of Cincinnati, Inc., provides a clinic within the City of Cincinnati wherein women may obtain elective abortions. Plaintiff Norman E. Matthews is a medical doctor who has performed abortion procedures. He is Medical Director of the Planned Parenthood Association. Defendant the City of Cincinnati is a municipal corporation. Defendant Stanley Broadnax is Health Commissioner of the City of Cincinnati.

2. On January 8, 1986 the Council of the City of Cincinnati adopted Ordinance 8–1986 providing for "the appropriate disposition of aborted human fetuses by hospitals and clinics where abortions are performed or occur spontaneously and laboratories to which aborted human fetuses are delivered. A copy of such ordinance is included herein as "Attachment A". Ordinance 8–1986 is a penal ordinance and it provides that any knowing violation thereof shall subject the violator to a fine of not more than $1,000.

3. As of the date of hearing, February 17, 1986, no regulations have been adopted that define the phrase "in a manner approved by the Commissioner of Health" other than a permit form included herein as "Attachment B". The City of Cincinnati doesn't plan to issue any additional regulations. (Tr. of hearing 2/17/86 pg. 35).

## II.

### OPINION

Any discussion of issues involving abortion must begin with the seminal decision of the United States Supreme Court in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and as reaffirmed in *City of Akron v. Akron Center for Reproductive Health, Inc.*, 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983). Its holding does not terminate at the corporate limits of the City of Cincinnati and its con-

tinued viability does not depend upon the approval of the City Council of the City of Cincinnati. Any ordinance that deals even peripherally with abortion must be tested by *Roe v. Wade.*

*Roe v. Wade* states in simple, unequivocal language that:

> [F]or the period of pregnancy prior to this 'compelling' point [the end of the first trimester] the attending physician, in consultation with his patient, is free to determine, without regulation by the State, that, in his medical judgment, the patient's pregnancy should be terminated. If that decision is reached, the judgment may be effectuated by an abortion *free of interference by the state.* (emphasis added).

410 U.S. at 163, 93 S.Ct. at 732.

■ The term "free of interference" means just that. It includes a freedom from excessive intervention, harrassment or any other means whereby the state would seek to discourage the individual's freedom of choice.[1] *See, e.g., Planned Parenthood of Missouri v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976).

It is beyond question that in Ohio a municipal corporation has a right to legislate on matters of local self government including police, sanitary and other similar regulations not in conflict with general laws.[2]

■ The case of *Akron Center for Reproductive Health, Inc. v. City of Akron,* is instructive on this limitation. *Akron* teaches that municipal ordinances, especially those imposing criminal penalties, must meet a specificity standard. 479 F.Supp. 1172, 1206 (N.D. Ohio 1979), *aff'd* 651 F.2d 1198 at 1211 (6th Cir.1981), 462 U.S. 416, 452, 103 S.Ct. 2481, 2504, 76 L.Ed.2d 687 (1983).

The Akron ordinance which required fetal remains to be "disposed of in a humane and sanitary manner"[3] was deemed to be "void for vagueness". The Supreme Court has announced that any statute is void on its face "which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). (*quoting Zwickler v. Kooter,* 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967)).

The Cincinnati ordinance provides that such fetal remains should be "interred, deposited in a vault or tomb, cremated or otherwise disposed of in a manner approved by the Commissioner of Health or the State of Ohio". The phrase "otherwise disposed of" is not ascertainable particularly in view of the intention of the City of Cincinnati not to issue any regulations.

■ There must be a causal connection between the power to legislate and the purpose of legislation. The City of Cincinnati asserts that it is concerned with the sanitary disposal of fetuses. There is neither a comparable ordinance regarding other human tissue disposal nor any evidence that fetal tissue represents a greater health hazard. In the absence of such evidence it is apparent that this ordinance is intended to interfere with or discourage abortions. No other purpose can be ascertained at this time. However well intentioned this ordinance may be, it is an "interference" and accordingly void.

An ordinance purporting to regulate in a permissable area may "not be utilized in such a way as to accomplish ... what we have held to be an otherwise unconstitutional restriction." *Planned Parenthood*

---

**1.** A distinction must be drawn between the "state" and individuals. It is beyond question that individuals have a right to object to the offering of abortions by engaging in peaceful picketing or any other accepted form of communication with either the hospitals and clinics involved or the individuals who seeks such

abortions. That right of communication, of course, does not include a right to resort to illegal acts.

**2.** Constitution of Ohio, Article XVIII, Section 3.

**3.** Section 1870.16.

**472**

*of Missouri v. Danforth*, 428 U.S. 52, 81, 96 S.Ct. 2831, 2847, 49 L.Ed.2d 788 (1975).

■ A City may do what its powers allow. It may legislate on matters of sanitation. It may not legislate on matters of humanity or theology. It may not by its conduct seek to regulate or interfere with a decision to terminate a pregnancy within the first trimester.

The ordinance in question is a threat to those who perform abortions and to those institutions where any type of abortion occurs. At the very least it appears to be contrary to the principle first advanced in *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

> In considering whether injunctive relief should be granted, a federal district court should consider a statute as of the time its jurisdiction is invoked, rather than some hypothetical future date. The area of proscribed conduct will be adequately defined and the deterrent effect of the statute contained within constitutional limits only by authoritative constructions sufficiently illuminating the contours of an otherwise vague prohibition. As we observed in *Baggett v. Bullitt* [377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964)], *supra* at 278, this cannot be satisfactorily done through a series of criminal prosecutions, dealing as they inevitably must with only a narrow portion of the prohibition at any one time, and not contributing materially to articulation of the statutory standard. *We believe that those affected by a statute are entitled to be free of the burdens of defending prosecutions, however expeditious, aimed at hammering out the structure of the statute piecemeal, with no likelihood of obviating similar uncertainty for others.* (emphasis added)

*Dombrowski* at 380 U.S. at 490–91, 85 S.Ct. at 1123. Moreover, the *Dombrowski* Court also noted that:

> The chilling effect upon the exercise of First Amendment rights may derive from

the fact of the prosecution, unaffected by the prospects of its success or failure. *Id.* at 487, 85 S.Ct. at 1121.

The United States Court of Appeals for the Sixth Circuit has recently reiterated the familiar four factors which this Court must consider in deciding to issue or withhold a preliminary injunction:

1. Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;
2. Whether the plaintiff has shown irreparable injury;
3. Whether the issuance of a preliminary injunction would cause substantial harm to others; and
4. Whether the public interest would be served by issuing a preliminary injunction.

*Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir.1985), quoting *Mason County Medical Association v. Knebel*, 563 F.2d 256, 264 (6th Cir. 1977).

■ In accordance with the foregoing Findings of Fact the Court finds that Plaintiffs have shown a strong likelihood of success on the merits, that there is irreparable injury when constitutional rights are violated and that the issuance of a preliminary injunction to protect constitutional rights serves the public interest and does not cause substantial harm to others.

Accordingly, the Court directs that the City of Cincinnati, its agents and employees be enjoined from enforcement of Ordinance 8–1986 until the hearing of this cause on its merits.

### III.

### CONCLUSIONS OF LAW

A. This Court has jurisdiction pursuant to 28 U.S.C. § 1343.

B. A penal city ordinance that lacks explanatory regulations is void for vagueness. *City of Akron v. Akron Center for Reproductive Health, Inc.*, 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983).

C. In the absence of a reasonable connection between a right to exercise legislative power and the actual exercise thereof such effort is void. *Planned Parenthood of Missouri v. Danforth*, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1975).

D. Where an effort by the council of a municipal corporation violates a holding of the Supreme Court of the United States mandating noninterference with persons seeking first trimester abortions, such effort is void *ab initio*. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

E. Where a plaintiff meets the standard for a preliminary injunction, such injunction should issue. *Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir.1985), quoting *Mason County Medical Association v. Knebel*, 563 F.2d 256, 264 (6th Cir.1977).

F. In accordance with the foregoing, plaintiffs are entitled to a preliminary injunction as set forth herein and such preliminary injunction does issue forthwith. Plaintiff will post a bond of $50.

IT IS SO ORDERED.

### ATTACHMENT A

### CITY OF CINCINNATI

AN ORDINANCE NO. 8–1986

Modifying the provisions of Title 7 by ordaining Chapter 749 of the Cincinnati Municipal Code providing for appropriate disposition of aborted human fetuses by hospitals, clinics where abortions are performed, or occur spontaneously, and laboratories to which aborted human fetuses are delivered, procurement of certificates for such disposal, and penalties for violations thereof.

WHEREAS, the state of Ohio presently makes no provision for disposition of aborted fetuses of less than fourteen weeks gestation; and

WHEREAS, the Council of the City of Cincinnati is of the opinion that the surgically or spontaneously aborted fetuses of less than twenty weeks gestation which occur in hospitals, clinics where abortions are performed, and laboratories to which the aborted fetuses are delivered for sanitary reasons and to protect the public health and safety should be interred, deposited in a vault or tomb, cremated, or otherwise disposed of in a manner approved by the Commissioner of Health or the state of Ohio; and

WHEREAS, Council is of the opinion that the same hospitals, clinics where abortions are performed and laboratories to which the aborted fetuses are delivered shall obtain a permit for disposal from the Commissioner of Health if the state of Ohio has not otherwise provided; now, therefore,

BE IT ORDAINED BY THE Council of the city of Cincinnati, state of Ohio:

Section 1. That Chapter 749 of the Cincinnati Municipal Code is hereby ordained to read as follows:

Sec. 749–1. Disposal of Aborted Fetuses.

Every hospital and clinic in which abortions are performed or occur spontaneously, and every laboratory to which the aborted human fetuses are delivered, shall provide that the fetuses be interred, deposited in a vault or tomb, cremated, or otherwise disposed of in a manner approved by the Commissioner of Health. The hospital, clinic, or laboratory may complete any tests necessary for the health of the woman who conceived or carried such aborted fetus or her future offspring prior to disposing of the aborted fetus.

No hospital or clinic where abortions are performed or spontaneously occur or laboratory which disposes of aborted fetuses shall dispose of any aborted fetuses without first receiving a permit to dispose of aborted fetuses from the Commissioner of Health. The Commissioner of Health shall not issue a permit unless he determines that the applicant has appropriate facilities, methods, and capabilities for disposal of aborted human fetuses in a sanitary manner consistent with public health and safety. Each such hospital, clinic and laboratory shall report on a form

provided by the Commissioner of Health the total number of aborted fetuses disposed of and a summary stating every manner of disposal used and the corresponding number of aborted fetuses for each manner of disposal. Such report shall be made annually by January 31 for the prior calendar year. A report must also be made whenever the methods of disposal used change. The Commissioner of Health shall provide forms for reporting under this section.

Sec. 749–3. Definitions.

For the purposes of this section, "aborted human fetus" shall mean the aborted offspring of human parents at every stage of biological development up to twenty weeks gestation which is not the subject of disposal and reporting requirements of the state of Ohio.

Sec. 749–99. Penalties.

Whoever knowingly violates any provision of Section 749–1 of this chapter shall be fined not more that $1,000.

Section 2. This ordinance shall take effect and be in force from and after the earliest period allowed by law.

Passed ___January 8___ A.D., 1986

## ATTACHMENT B

### CINCINNATI HEALTH DEPARTMENT

Application for Permit to Dispose of Aborted Human Fetuses Pursuant to Chapter 479 of Cincinnati Municipal Code

Name of Applicant _____ Hosp. _____ Clinic _____ Lab _____
Address of Applicant _____

_____
　　　　　　　　　　　　Zip Code　　　　　　Telephone Number

METHOD(S) OF DISPOSAL*

_____
_____
_____

Signature _____
　　　　　　　　　　Authorized Agent of Applicant

_____ APPROVE _____ DISAPPROVE
Signature _____
　　　　　　　　Health Commissioner　　　　　　　　　Date

\* For the purposes of this application, disposal does not include transfer of aborted human fetuses to laboratories

RETURN TO: Cincinnati Health Department
3101 Burnet Avenue
Cincinnati, OH 45229