BANKS, Justice,
dissenting:
I must dissent from the majority opinion because I disagree with its interpretation of the pertinent statute, as well as its conclusions. In sum, I do not agree that the statute should be interpreted to prohibit Bullock from being a candidate and, even if is so interpreted, I do not believe that his discharge was “for good cause” within the means of our employment security law.
While I agree with the majority that Bullock was subject to the civil service provisions codified at Miss.Code Ann. §§ 21-31-51, -75, I cannot concur in its interpretation that those laws prohibited Bullock from qualifying as a candidate in the mayoral election. The majority notes the principle that a plain and unambiguous statute ought not to be further constructed by this Court. It further “holds” that the legislative intent behind the prohibition of civil servants’ engagement in political campaign activity as a representative of a candidate is to protect civil servants from being pressured into contributing to a particular official’s campaign. In my view, both premises militate against the majority’s con-elusion that Bullock was prohibited under this statute from himself running for office.
First, the plain and unambiguous language states that civil servants such as Bullock may not “engage in any political campaign as a representative of any candidate.” This Section says nothing about engaging in any political campaign as a candidate. To state what is obvious to my mind, one is not a “representative” of oneself.[1] Therefore, the plain and unambiguous language in the statute did not prohibit Bullock’s activity. The majority has not offered any justification for its expansive interpretation of an admittedly plain and unambiguous statute.
Second, the legislative intent that has been identified by the majority opinion provides further support for a literal reading of the statute. If the prohibition is intended to remove all external pressures on civil servants to provide political support to their employers, then there was no reason for the legislature to include within the statute’s ambit any prohibition on one’s qualification of himself for election to political office. A civil servant who wishes to run for political office would not be doing so as a result of the kind of political pressure from his employer that prompted this legislation. Thus, the legislative intent of the statute, in addition to its plain language, seems to me to permit Bullock to qualify himself to run for office.
While, as I have noted, the statute seems to me to plainly on its face to allow Bullock’s activity, I wish to further note that it is especially important for this Court to refrain from any expansive construction of statutes that purport to limit citizens’ ability to assert their constitutional rights, such as Bullock’s freedom to engage in political speech and activity. Cf. Buckley v. Valeo, 424 U.S. 1, 45, 96 S.Ct. 612, 647, 46 L.Ed.2d 659 (1976) (limitations of political expressions are subject to most exacting scrutiny); Thornhill v. Alabama, 310 U.S. 88, 95, 60 S.Ct. 736, 740, 84 L.Ed. 1093 (1940) (freedom of speech is a fundamental right and liberty).
*1153 In any event, even if I could concur with the majority’s conclusion that the statute at issue here prohibited Bullock from running for mayor, I could not further conclude that his doing so was grounds for denial of unemployment benefits. As I have noted above and the majority concedes, the plain language of this statute does not in any way indicate that Bullock’s behavior was prohibited and therefore grounds for his dismissal. Needless to say, nor has this Court previously construed the statute as it does today. Since he had no way of knowing that his conduct was grounds for discharge, I would not now bar him from obtaining unemployment compensation on the grounds that he was discharged for “cause.” Since the statute was, at best, extremely ambiguous, Bullock’s conduct in qualifying for the mayoral election cannot fairly be considered a willful and wanton disregard of his employer’s interest, nor a carelessness or negligence of such degree as to show an intentional or substantial disregard of his duties as to be misconduct as would bar his right to unemployment compensation. Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982) (enunciating standard of misconduct that will preclude an award of benefits).[2]
Finally, I would like to address the majority’s conclusion that Bullock does not have standing to raise an overbreadth challenge to this statute’s restraints on people’s First Amendment rights. Without question, a litigant does not ordinarily have standing to challenge the constitutionality of the breadth of a statute when its application to his conduct is nevertheless constitutional. This requirement that litigants themselves be “injured” by a statute’s defects, however, has been historically relaxed in the context of overbreadth challenges to statutes that restrict First Amendment freedoms. Broadrick v. Oklahoma, 413 U.S. 601, 612-15, 93 S.Ct. 2908, 2915-17, 37 L.Ed.2d 830 (1973). It has long been recognized that litigants may raise overbreadth challenges in the area of the First Amendment even though their own conduct may have been constitutionally restrained where the statute in question reaches substantially beyond regulable speech. The rationale of allowing such facial challenges inheres in the uniquely oppressive nature of overly broad restraints on speech, the freedom of which is at the core of our fundamental rights. Dombrowski v. Pfister, 380 U.S. 479, 486-7, 85 S.Ct. 1116, 1120-21, 14 L.Ed.2d 22 (1965) (the First Amendment freedoms occupy an especially revered and protected place in our scheme of fundamental rights). An overly broad statute that restrains citizens’ freedom of speech will work a substantial chilling effect on constitutionally protected speech, such that there may never be a litigant who has traditional standing inasmuch as he has engaged in the unconstitutionally prohibited expression. Thus, the rule which relaxes standing requirements serves to combat this chilling effect on constitutionally valuable expression. See generally, Richard H. Fallon, Jr., “Making Sense of Overbreadth,” 100 Yale L.J. 853 (1991); Note, “The First Amendment Overbreadth Doctrine,” 83 Harvard L.Rev. 844 (1970).
That said, I would hold that Bullock does have standing to raise an overbreadth challenge to this statute. I would nevertheless conclude that the statute, as written, does not work any unconstitutional restraint on municipal employees’ freedom of political expression. Broadrick v. Oklahoma, 413 U.S. 601, 617, 93 S.Ct. 2908, 2918-19, 37 L.Ed.2d 830 (1973) (rejecting overbreadth challenge to state statute which prohibited state employees from participating in any political campaign or organization as a representative or a candidate).
To reiterate, I feel compelled to dissent from the majority opinion because I cannot agree with its interpretation of the statute to prohibit Bullock from running for office, and *1154 I cannot agree that Bullock was rightfully denied unemployment benefits.
SULLIVAN, P.J., and McRAE, J., join this opinion.

. Webster's New International Dictionary, 2d ed.: representative: "One who or that which represents; specif.: a A person or thing that represents, or stands for, a number or class of persons or things, or that in some way corresponds to, stands for, replaces, or is equivalent to, another person or thing; a typical embodiment, type, b One who represents others or another in a special capacity; an agent, deputy, or substitute (emphasis added).

. Moreover, to the extent that Bullock’s grounds for discharge arose in his assertion of a constitutional right, this Court has held that such behavior will not give rise to "misconduct” sufficient to preclude unemployment benefits even though he may have been lawfully discharged. See MESC v. McGlothin, 556 So.2d 324 (Miss.1990) (State may not deny unemployment benefits to an individual who was discharged for declining to abandon her observation of sincerely held religious beliefs as evidenced in her attire, even though she may have been lawfully discharged for failing to observe the employer’s dress code).