

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-10-2006

# Friends Residents v. St Thomas Dev Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2378

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

## Recommended Citation

"Friends Residents v. St Thomas Dev Inc" (2006). *2006 Decisions.* Paper 1281.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1281

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-2378

FRIENDS AND RESIDENTS OF SAINT THOMAS TOWNSHIP, INC., (FROST), a
nonprofit corporation incorporated under the nonprofit laws of the Commonwealth of
Pennsylvania; MICHAEL A. URBAN, WINFRED L. WALLS; GLORIA S. SABERIN,
as Representatives of the Class Composed of all Residents of Saint Thomas
Township, Franklin County, Pennsylvania,

Appellants

v.

ST. THOMAS DEVELOPMENT, INC., a for-profit corporation incorporated under the
laws of the Commonwealth of Pennsylvania; PETER DEPAUL, Director and President of
the Corporation, in his corporate capacity; ANTHONY DEPAUL, Director, Secretary,
and Treasurer of the Corporation, in his corporate capacity; DONNA DEPAUL-
BARTYNSKI, Director, of the Corporation, in her corporate capacity;
THE COMMONWEALTH OF PENNSLYVANIA; PEDRO A. CORTES, Secretary of
the Commonwealth of Pennsylvania; JERRY PAPPERT, Attorney General of the
Commonwealth of Pennsylvania

Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court Civil No. 04-cv-627)
District Judge: Honorable Yvette Kane

Submitted under Third Circuit LAR 34.1(a)
March 7, 2006

BEFORE: ROTH and GREENBERG, Circuit Judges, and
BUCKWALTER, District Judge*

(Filed: April 10, 2006)

_____

*Honorable Ronald L. Buckwalter, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

_____

OPINION

_____

BUCKWALTER, <u>Senior District Judge</u>.

In this appeal, we consider whether the United States District Court for the Middle District of Pennsylvania erred in granting Appellees' Motions to Dismiss Appellants' Complaint by concluding that Appellants lacked standing; that the Eleventh Amendment bars the suit against the Commonwealth of Pennsylvania, the Attorney General of the Commonwealth and the Secretary of the Commonwealth; and, that Appellants failed to state a claim under 18 U.S.C. § 1983 and § 1985. We will affirm the judgment of the District Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 5, 2003, Appellee St. Thomas Development, Inc. ("Corporation")[1] purchased over 450 acres of land. Thereafter, the Corporation submitted a land

_____

[1] Appellees Peter DePaul, Anthony DePaul and Donna DePaul-Bartynski are directors and officers of the St. Thomas Development, Inc. and will be referred to collectively as "the Corporation" or "Corporate Appellees." Additionally, the Corporation was initially incorporated under the name St. Thomas Quarry, Inc. on May 1, 2003 but changed its named on May 9, 2003.

2

development plan to the Township of Saint Thomas, Pennsylvania ("Township"). The development plan sought authorization for the Corporation to develop a limestone quarry, an asphalt plant and a concrete plant on 360 acres of land located within the Township.

In response to the Corporation's development plan, residents and land owners in the Township formed Appellant, Friends and Residents of Saint Thomas Township, Inc. ("FROST").[2] With the aid of FROST, on November 4, 2003, the Township elected Frank Stearn, ("Stearn"), a member of FROST, as a write-in candidate for Township Supervisor.[3] Stearn ran on the platform that, as a Supervisor, he would work to stop the Corporation's development plan.

On February 18, 2004, the Corporation sent a letter to the Chairman of the Township's Board of Supervisors. The letter "requested" that Stearn "recuse himself from any and all actions taken by the [Township] Board of Supervisors on any and all matters relating to or connected with [the Corporation]'s project."[4] (App. 151.) Citing

---

[2]  Two of FROST's directors, Michael A. Urban and Winfred L. Walls, are also named as Appellants. Urban and Walls, together with Township resident, Gloria S. Saberin, serve as class representatives. Appellants state that the class includes "all natural persons in the Township of Saint Thomas in Franklin County, Pennsylvania on February 18, 2004, who currently reside in the Township of Saint Thomas." (App. 167, ¶ 2.) The Court will refer to Urban, Walls, Saberin and FROST collectively as Appellants.

[3]  Stearn is not named as a party in this case.

[4]  Appellants characterize the letter as a "demand" to recuse Stearn from participating in matters involving the Corporation. As noted by the District Court, however, "nowhere in the letter do[es] the [Corporation] 'demand' that Mr. Stearn recuse." (App. 9, fn. 3.) The letter does "repeatedly 'request[]' that Mr. Stearn be prevented from considering matters pertaining to the Corporation." Id. The letter also "clearly threatens litigation in the event such requests were not honored." Id.

Pennsylvania case law, the Corporation based the request for recusal upon Stearn's "clear bias concerning [the Corporation's] project and his corresponding duties and legal obligations as an elected public official in the capacity [as a] Supervisor." Id. The Corporation concluded that "[i]t would be far better [for Stearn to recuse himself] than to litigate the matter." Id.

In his Affidavit, Stearn recounted three instances in which the Corporation's letter affected his position as a Township Supervisor. First, Stearn states that the Chairman asked him to "send a letter to the Department of Environmental Protection outlining the concerns of the Township Supervisors" regarding the Corporation's development plan. (App. 210.) Upon Stearn reminding the Chairman of the Corporation's letter, the Chairman withdrew his request for Stearn to send the letter. On a second occasion, Stearn abstained from voting on issue that related to the Corporation. Id. at 212. Finally, when another Supervisor asked Stearn to second a motion to approve a request by the Corporation, Stearn again reminded the Supervisors of the letter from the Corporation, and the Township Solicitor determined that the motion could not be seconded or approved. Id.

On February 27, 2004, Appellants submitted a formal request to Appellee, the Attorney General for the Commonwealth of Pennsylvania ("Attorney General").[5] On

_____

[5] Thomas W. Corbett, Jr. succeeded named Appellee Gerald J. Pappert as Attorney General. Pursuant to Fed. R. Civ. P. 25(d)(1), Attorney General Corbett is automatically substituted as a party.

4

March 8, 2004, Appellants also submitted a formal request to Appellee, the Secretary of the Commonwealth of Pennsylvania ("Secretary").[6] In its formal request, Appellants alleged that the Corporation exceeded its authority as a "lawful" business, by wielding "illegitimately claimed rights to deny the fundamental rights of the residents of [the Township] to self government." (App. 69.) Appellants then requested that the Attorney General and the Secretary "take immediate action to enjoin the violation of constitutional rights of the residents of [the Township]." Id.

When neither the Attorney General nor the Secretary responded to Appellants' request, Appellants filed a Complaint in the Middle District of Pennsylvania on March 24, 2004[7] asserting that the Corporation "wielded State-conferred corporate powers to prevent the residents' elected representatives from governing the Township" in violation of 42. U.S.C. §§ 1983 and 1985. (App. 162.) The Appellants also filed the action against the Commonwealth of Pennsylvania for "bestow[ing] constitutional rights and protections by natural person onto corporations through the adoption of 15 Pa. Cons. Stat. § 1501 (2005) ("§ 1501"),"[8] (App. 175, ¶¶ 59, 76, 89, 99), and the Attorney General

---

[6]   The Secretary of the Commonwealth, and named Appellee, is Pedro A. Cortes.

[7]   Appellants filed an Amended Complaint on April 12, 2004. In the proceeding discussion, the Court will refer to the Amended Complaint as the "Complaint."

[8]   Section 1501 states that "a business corporation shall have the legal capacity of natural persons to act." 15 Pa. Cons. Stat. § 1501 (2005). For example, under § 1502, the Corporation has the power "[t]o sell, convey, exchange or otherwise dispose of all or any part of its property and assets, or any interest therein, wherever situation." Id. § 1502 (5).
        Though addressed by the District Court and Commonwealth Appellees, Appellants have not raised or argued the constitutionality of § 1501 on appeal. Therefore, the Court

5

and the Secretary for allegedly enabling and sanctioning "the constitutional violations committed by the [Corporation]" and for refusing "to take action to enjoin them."  (App. 162).

The Commonwealth Appellees filed a motion to dismiss the Complaint on April 13, 2004.  The Corporate Appellees filed a motion to dismiss the Complaint on April 23, 2004.   The Corporate Appellees also filed motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure on May 19, 2004.  Appellants then filed a Motion to Certify the Class on June 21, 2004.  On March 31, 2005, the District Court granted both motions to dismiss, denied the motion for sanctions and denied as moot Appellants' motion for class certification.

Appellants raise the following issues on appeal:

(1)     Whether the District Court erred in ruling that the [Appellants] were not injured by the action of the [Corporate Appellees], despite the [Corporate Appellees'] threat to sue the [Appellants'] local government that directly injured the [Appellants] by forcing the removal of their Supervisor from the decision-making process?

(2)     Whether the District Court erred in holding that the [Appellants] have failed to state a claim that the [Corporate Appellees] corporate Defendants acted under 'color of state law' despite the [Corporate Appellees'] wielding of Commonwealth-bestowed constitutional rights to threaten and intimidate the [Appellants'] local government and its residents?

will not discuss this issue.

      (3)      Whether the District Court erred in ruling that the Eleventh Amendment limits the jurisdiction of the federal court to hear the [Appellants'] [s]uit [w]hich [s]eeks to [v]indicate [Appellants'] [f]undamental [c]onstitutional [r]ights?[9]

(Appellants Br. at 1-2.)

## II.  JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a), and this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. This Court has plenary review over the District Court's decision to grant dismissal of

---

[9]  The Corporate Appellees argue that Appellants waive their § 1985(3) claim by failing to include it in the issue section of their brief pursuant to Federal Rule of Appellate Procedure 28.  (Corporate Appellees Br. at 25.)  Federal Rule of Appellate Procedure 28 requires, *inter alia*, that Appellants include in their brief, "(5) a statement of the issue presented for review."  Fed. R. App. P. 28(5).  Appellants included a statement of three issues in its opening brief.  The issues, however, do not reference Appellants' argument under § 1985(3).  (Appellants Br. at 1-2.)

The Corporate Appellees concede, however, that Appellants address their § 1985(3) claim in "summary two-paragraph argument" in their opening brief.  (Corporate Appellees Br. at 26.)  The Court finds that the inclusion of a section on § 1985(3) in the argument portion of Appellants brief is sufficient to preserve this issue on appeal.  Nagel v. Alspach, 8 F.3d 141, 143 (3d Cir. 1993) ("When an issue is either not set forth in the statement of issues presented or not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal").  The Court also finds that Appellant, albeit terse, discusses this issue enough to presume the issue is not waived. Id. (declining to review issue mentioned "casually in one sentence"); Laborers' Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes 'a passing reference to an issue . . . will not suffice to bring that issue before this court'") (quoting Simmons v. City of Philadelphia, 947 F.2d 1042, 1066 (3d Cir. 1991)).  Finally, under Federal Rule of Appellate Procedure 2, the Court has discretion to relax the requirements of Rule 28. Fed. R. App. P. 2.  Thus, the Court will address Appellants claim under § 1985(3).

Appellants' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and reviews the District Court's decision *de novo*. Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004). A motion to dismiss under Rule 12(b)(6) should be granted only if, "accepting as true the facts alleged and all reasonable inferences that can be drawn therefrom" there is no reasonable reading upon which the plaintiff is entitled to relief. Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988).

## III. DISCUSSION

### A. Standing

The District Court properly ruled that Appellants' Complaint should be dismissed because Appellants lack standing to bring the suit. As stated by the Supreme Court in Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), standing requires, *inter alia*, that the Appellants must suffer an "injury in fact."[10] An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent and not merely conjectural or hypothetical." Id. (citations and internal quotations omitted).

The District Court found that:

---

[10]  In addition to an "injury in fact," there must be "a casual connection between the injury and the conduct complained of - - the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not the result [of] the independent action of some third party not before the court.'" Lujan, 504 U.S. at 560 (citations omitted). It must also be "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 561 (citation omitted). Since the Appellants have failed to allege an "injury in fact," we decline to address the remaining elements required for standing.

> the catalyzing event around which [Appellants] construct this cause of action is the February 18, 2004 letter the [Corporation], through their counsel issued to the Township's Board . . . . It was apparently because of this act that Mr. Stearn elected to recuse himself from considering or voting on matters concerning the Corporation, and it is allegedly because of this letter that [Appellants] believe their constitutional rights have been violated.

(App. 9.) The District Court concluded that Appellants failed to "allege a cognizable injury in fact" because the Corporation's "act of issuing the February 18, 2004 letter simply did not abridge any constitutional right of any of the Plaintiffs." Id. at 10-11. Additionally, although Appellants categorize their feelings and concerns as "injuries," as a matter of law, such "injuries" are simply not recognized for purposes of standing.[11]

Nonetheless, Appellants argue that "the threat of the commencement of 'proceedings, either of a civil or criminal nature,' which seek to interfere with the exercise of constitutionally-protected rights, constitutes legal injury." (Appellants Br. at 11) (citing Dombrowski v. Pfister, 380 U.S. 479 (1965); Steffel v. Thompson, 415 U.S. 459 (1974); Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289 (1979); Pestrak v. Ohio Elections Comm'n, 926 F.2d 573 (6th Cir. 1991)). Yet, as Corporate Appellees note, each case cited by Appellants is distinguishable from the present case. For example, in Dombrowski, the plaintiffs attempted to restrain government officials from

---

[11]   The District Court noted, the affidavits describe "subjective fears and anger regarding the alleged powers and rights enjoyed by corporations, coupled with allegations regarding personal feelings of disenfranchisement and concern for the future and health of republican government." (App 10.)

prosecuting or threatening to prosecute them for alleged violations of the Louisiana Subversive Activities and Communist Control Law and the Communist Propaganda Control Law. 380 U.S. at 481. The Supreme Court stated that "so long as the statute remains available to the State the threat of prosecutions of protected expression is a real and substantial one."[12] Id. at 494. Unlike the Appellants in Dombrowski, "there is no allegation of any action of any kind being taken or threatened against any of the [Appellants], let alone any threatened criminal prosecution." (Corp. Appellees' Br. at 13.) Although the letter from the Corporation to the Township Board threatens litigation against the Township if Stearn failed to recuse himself, litigation is not threatened against any of the Appellants.[13]

Appellants fare no better in their attempt to categorize § 1501, as opposed to the threat of litigation, as the basis for their "injuries." The Supreme Court in Babbitt noted that appellants "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." 443 U.S. at 298. Here, § 1501 does

---

[12] Likewise in Steffel, the plaintiff was threatened with prosecution under a criminal trespass statute after the manager of a shopping center complained to police about petitioner's distribution of political handbills. 415 U.S. at 454.

[13] Additionally, Appellants standing argument fails because Appellants are not attempting to assert their own rights because neither the statute nor the letter is preventing Appellants' participation in Township governance. In Pestrak the Sixth Circuit held that the plaintiff, in order to show standing, "must be asserting his own rights and interests not solely those of third parties." 926 F.2d at 577 (citing Sec'y of State of Md. v. Joseph H. Munson Co., 467 U.S. 947, 955 (1984)). Appellants are possibly attempting to assert the rights of Stearn to be allowed to participate in matters concerning the Corporation in his position as a Supervisor, however, Stearn was not named as a Plaintiff in this case.

10

not result in a "direct injury" to Appellants because as the Commonwealth Appellees note, "[t]his section does no more than permit a corporation to act as a legal entity separate from its stockholders and to be the legal owner of its property." (Commw. Appellees' Br. at 15) (citing Cole v. Price, 758 A.2d 231 (Pa. Super. 2000)).

We agree with the District Court that Appellants cite "no persuasive legal authority in support of their contention that the act of issuing a letter by a corporation to influence - or even threaten - an elected municipal body or its members is unconstitutional." Id. at 11. Appellants also fail to cite any persuasive legal authority that the threat of litigation against a third-party constitutes an "injury in fact" or that an "injury in fact" occurs from a statute that fails to result in direct injury upon Appellants.

B. Eleventh Amendment Immunity

In addition to ruling that Appellants lacked standing, the District Court properly ruled that Appellants' Complaint should be dismissed against the Commonwealth Appellees under the Eleventh Amendment of the United States Constitution.[14] Appellants argue that the District Court erred in dismissing their claims

---

[14] The Eleventh Amendment states:

> The Judicial Power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. AMEND. XI.

11

against the Commonwealth Appellees[15] for three reasons: (1) the plain language, original intent, and history of the Eleventh Amendment bars only actions brought by citizens of another state and not by citizens of the state being sued; (2) by ratifying the Constitution, Pennsylvania consented to federal review of its citizens' claims of Pennsylvania's denial of their constitutional rights, and (3) the District Court failed to examine the fundamental nature of Appellants' constitutional injuries. (Appellants' Br. at 26, 31, 39.)

Appellants' first argument must fail. Appellants argue that the plain language, original intent and history of the Eleventh Amendment do not bar actions in federal court by citizens of the state being sued. Appellants attempt to draw support for their argument by citing cases which pre-date the Supreme Court's controlling decision in Hans v. Lousiana. 134 U.S. 1 (1890). (Appellants' Br. at 27) (citing Cohens v. Virginia, 19 U.S. 264 (1821); Osborne v. Bank of the United States, 22 U.S. 738 (1824)). As noted by the District Court, "although the terms of the amendment do not specifically proscribe suits against a state by its own citizens, the Supreme Court has held that states are immune from such suits brought in federal court." (App. 12) (citing Hans, 134 U.S. at

---

[15] The Court notes that state officials, such as the Secretary and the Attorney General, acting in their official capacities are routinely afforded Eleventh Amendment immunity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989) (finding that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and "as such, it is no different from a suit against the State.") Appellants do not allege that the Secretary or the Attorney General acted outside the scope of their official capacities. For purposes of analysis, the Secretary and Attorney General will be treated as one in the same with the Commonwealth.

10); see also Fed. Mar. Com'n v. South Carolina State Ports Auth., 535 U.S. 743, 754 (2002) (noting that the Supreme Court has consistently "held that the sovereign immunity enjoyed by the States extends beyond the literal text of the Eleventh Amendment"); Bd. of Tr. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001) (finding that the "ultimate guarantee of the Eleventh Amendment" is to protect non-consenting States from suits by private individuals in federal court); Employees of the Dep't of Pub. Health & Welfare v. Dep't of Pub. Health & Welfare, 411 U.S. 279, 280 (1973) (stating that "it is established that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State").

Appellants concede that courts have held that the Eleventh Amendment provides states with broad immunity but assert that "the underpinnings of those cases have been challenged . . . ." (Appellants' Br. at 26) (citing Welch v. State Dep't of Highways, 483 U.S. 468 (1987)).  Appellants also cite extensive historical and legal scholarship as support for their  interpretation of the Eleventh Amendment.  (Appellants' Br. at 26-30.)  Despite Appellants perceived validity of the dissent in cases such as Welch and the plethora of scholarship on this issue, Appellants overlook the words of the Welch majority, which clearly state that:

> [t]he rule of law depends in large part on adherence to the doctrine of *stare decisis* . . . . It follows that '*any departure from the doctrine of stare decisis demands special justification*.' Although the doctrine is not rigidly observed in constitutional cases, 'we should not be . . . unmindful, even when constitutional questions are involved, of the principle of *stare decisis* . . . .

13

<u>Welch</u>, 483 U.S. at 478 (citations omitted) (emphasis added). Although Appellants argue that they have an "unprecedented case," Appellants fail to articulate any "special circumstance" that necessitates overruling over a hundred years of precedent since <u>Hans</u>.

Next, Appellants' second argument also fails. Appellants argue that Pennsylvania consented to suits by its own citizens in federal court by ratifying the Constitution. Even though courts have interpreted the Eleventh Amendment to provide broad sovereign immunity for states, a state can waive immunity by consenting to suit.[16] <u>Blatchford v. Native Vill. of Noatak & Circle Vill.</u>, 501 U.S. 775, 779 (1991). State consent, however, is construed narrowly and exists only where the State "makes a 'clear declaration' that it intends to submit itself" to a court's jurisdiction. <u>Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.</u>, 527 U.S. 666, 670 (1999). In the absence of any "clear declaration" by the Commonwealth Appellee indicating the Commonwealth's waiver of immunity in this case, the District Court was correct in holding that Eleventh Amendment immunity applies. Further, as Commonwealth Appellees note, the Supreme Court expressly stated that states did not surrender their immunity from private suits under the Eleventh Amendment by ratifying the Constitution.

---

[16]   The Supreme Court has also held that a state's immunity can be abrogated by Congress, <u>Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.</u>, 527 U.S. 666, 670 (1999), and that the Eleventh Amendment allows suits against state officials in their official capacities where Plaintiff seeks prospective, injunctive relief for violation of federal law. <u>Ex Parte Young</u>, 209 U.S. 123 (1908). Appellants have not asserted that the Commonwealth's Eleventh Amendment immunity has been abrogated by Congress or that they seek "prospective, injunctive" relief from the Secretary and/or the Attorney General.

14

<u>Fed. Mar. Com'n</u>, 535 U.S. at 751-52.

Finally, Appellants' third argument also fails. Appellants argue that the District Court erred in its Eleventh Amendment analysis by failing to examine the fundamental nature of Appellants' constitutional injuries. As discussed above, Eleventh Amendment immunity is well-established and broad, subject only to a few noted exceptions. The proper focus for the District Court in determining the scope of Eleventh Amendment immunity is an examination of the applicability of those exceptions, which the District Court did.[17]

C.    <u>Section 1983 Claim</u>

The District Court properly ruled that Appellants failed to state a claim under 42 U.S.C. § 1983.[18] In deciding whether state action is present in the context of a claim brought under § 1983, the court determines whether "there is a sufficiently close

---

[17]    Appellants state that because they "have already turned to the Commonwealth itself for a remedy, by petitioning the State's Attorney General and Secretary of State for relief" and "those State officials have refused to act," they are "remediless absent federal intervention." (Appellants' Reply at 31.) However, a complaint was filed in the Court of Common Pleas of Franklin County, Pennsylvania. The case, brought by the Township and Stearn, seeks "a declaratory judgment as to whether Stearn is required to recuse himself from matters related to the approvals being sought by the [Corporate Defendants]." (Corporate Appellee's Br. at 6.)

[18]    Section 1983 states:

[e]very person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injury in an action at law.

nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (quotation omitted). Such a nexus can be established if a state has exercised "coercive power or has provided such significant encouragement . . . that the choice must in law be deemed to be that of the State."[19] Id. at 1004. Yet, "mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives." Id. at 1004-1005.

The District Court dismissed Appellants § 1983 claim because Appellants "offer[ed] no allegations in the Complaint that even suggest a 'sufficiently close nexus' between the Commonwealth and the Corporation." (App. 22) (citing Moose Lodge No. 107 v. Iris, 407 U.S. 163 (1972); Jackson v. Metro. Edison Co., 419 U.S. 345 (1974)). The District Court found that the "Complaint indicates only that the Corporation was chartered in Pennsylvania and that [Commonwealth Appellees] Pappert and Cortes did not respond to [Appellants'] letters demanding that they enjoin the Corporation from acting." (App. 14.) The District Court concluded that "neither of these actions or inactions by the Commonwealth or its officials can be interpreted as 'significant encouragement' from the Commonwealth. At most, [Appellants'] allegations suggest that the Commonwealth may have acquiesced in the Corporation's actions by not responding

---

[19] For example, "the required nexus may be present if the private entity has exercised powers that are traditionally the exclusive prerogative of the State." Blum, 457 U.S. at 1005 (citation and internal quotations omitted). Appellants do not allege that the Corporation exercised State exclusive powers.

16

to [Appellants'] demands." Id. Yet, the District Court concluded that "Blum clearly instructs that such acquiescence is insufficient to hold the Commonwealth responsible for the any alleged injury cause by the Corporation's letter to the Township." Id..

Nonetheless, appellants argue that the District Court erred by "misinterpreting - and then misapplying - the [Appellants'] assertion that the Corporate Defendants acted 'under color of state law' when they wielded State-conferred rights against the [Appellants'] Township government."[20] (Appellants' Br. at 16.) Yet, Appellants "acknowledge the extensive modern jurisprudence under which corporations are not treated as state actors" and seem to argue not that the District Court erred in its interpretation and application but for "a re-evaluation of that 'settled law.'" Id. at 20. Despite citing a plethora of cases in which the federal judiciary has recognized corporations to be "creations of the state" or "creatures of the state," Appellants fail to articulate why this Court should depart from the well-founded precedent upon which the District Court relied.

D.    Section 1985 Claim

The District Court also properly ruled that Appellants failed to state a claim under 42 U.S.C. § 1985(3).[21] In order to state a claim under §1985(3), a plaintiff must

---

[20]    The "state-conferred rights" to which Appellants refer are enunciated in § 1501.

[21]    Section 1985(3) provides:

> If two or more persons in any State or Territory . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and

17

allege: (1) a conspiracy of two or more persons; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of person to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).

Notably, the Supreme Court has limited the reach of claims under §1985(3). The Supreme Court initially noted that in order to assert a claim under §1985(3) "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Subsequent Supreme Court decisions have noted that "whatever may be the precise meaning of 'class' for purposes of Griffin's speculative extension of §1985(3) beyond race, the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the §1985(3) defendant disfavors." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 269 (1993); see also United Bhd. of Carpenters & Joiners of America v. Scott, 463 U.S. 825, 828-829 (expressing skepticism that the statue forbids "wholly nonracial, but politically motivated conspiracies" and concluding that commercial or economic animus could not form the basis for a cognizable

immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42. U.S.C. §1985(3).

18

§ 1985(3) claim).   The Third Circuit in <u>Lake</u> further limited § 1985(3) claims to "invidious discrimination" predicated on discrimination against individuals with "immutable characteristics" such as race, gender or mental handicap.   112 F.3d at 687.

In the present case, the District Court concluded that although Appellants adequately alleged a conspiracy,[22] Appellants' claim under 42 U.S.C. §1985(3) "must fail because [Appellants] do not constitute a protected class."  (App. 24.)  The Appellants state that their "class" consists of "all natural persons residing in the Township of Saint Thomas in Franklin County, Pennsylvania, on February 18, 2004,  who currently reside in the Township" and the class deals with "issues related to governance of [the Township]." (App. 80, ¶ 22, 24.)  Without further explanation, in its opening brief Appellants' only contention is that the District Court erred in dismissing Appellants' claim under §1985(3) because "courts, including the U.S. Supreme Court, have declared that classifications based on political activity may constitute an actionable claim under §1985."  (Appellant's Br. at 42) (citing <u>Snowden v. Hughes</u>, 321 U.S. 1 (1944); <u>reh'g</u> <u>denied</u>, 321 U.S. 804 (1944); <u>Nixon v. Herdon</u>, 273 U.S. 536 (1927); <u>Nixon v. Condon</u>, 286 U.S. 73 (1932);

---

[22]   The District Court concluded that the Appellants adequately alleged a conspiracy because Appellants alleged in their complaint that the individual Corporate Appellees "conspired . . . to wield the State-conferred powers of the [Corporation] to violate the constitutional rights of the [Appellants.]"  (App. 24.)  Although the Corporation and its officers share an identity, <u>Robison v. Canterbury Vill., Inc.</u>, 848 F.2d 424, 431 (3d Cir. 1988), and a conspiracy requires two or more persons, <u>Burden v. Wilkes-Barre Area Sch. Dist.</u>, 16 F. Supp. 2d 569, 573 (M.D. Pa. 1998), the District Court in construing the complaint in favor of Appellants, found that the Complaint adequately alleged that the officers were acting in their individual, rather than corporate capacities.

Cameron v. Brock, 473 F.2d 608 (6th Cir. 1973); Keating v. Carey, 706 F.2d 377 (2nd Cir. 1983)). In light of the Supreme Court's decision in Bray and further clarification of the scope of §1985(3) in the Third Circuit's decision in Lake, the cases that Appellants cite are unpersuasive.

In its Reply, Appellants also argue that "the District Court improperly dismissed the [Appellants'] Section 1985 claims, because the District Court's 'strongly suggest' standard does not rise to the level of review required for a ruling on a Motion to Dismiss."[23] (Appellants' Reply at 33.) Regardless of how the District Court characterized the precedent, under Bray, Appellants must allege "something more" than simply a group of individuals who share in their disagreement regarding the political influence of the Corporation in their Township. As noted, the Third Circuit defined this "something more" to include "immutable characteristics" such as race, gender or mental handicap. Appellants fail to assert a commonality of an immutable characteristic amongst the class members, such as race, gender or mental handicap, in their Complaint.

Additionally, other than quoting Lake for the proposition that "Section 1985(3) must be 'subject to reinterpretation as times and circumstances require'" (Appellants' Reply at 34) (quoting Lake, 112 F.2d at 687), Appellants fail to persuade, or even argue, why § 1985(3) should be extended to include Appellant's "discrete political jurisdiction," particularly in the absence of an immutable characteristic. (Appellants'

---

[23] In its opinion, the District Court concluded that "Griffin, Scott, Bray and Lake strongly suggest that [Appellants] have no recourse under section 1985(3)." (App. 25.)

Reply at 34).

## IV.  CONCLUSION

For the foregoing reasons, the judgment of the District Court in granting

Appellees' Motions to Dismiss Appellants' Complaint is affirmed.

---